

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4367 - (95CR509-4) | **DATE** | 10/8/2003 |
| **CASE TITLE** | RUSSELL ELLIS vs. UNITED STATES OF AMERICA | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Ellis' section 2255 motion is denied and this case is dismissed with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| | Notices mailed by judge's staff. | | | OCT 1 0 2003 | |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| TBK | courtroom deputy's initials | | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUSSELL ELLIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 4367 (95 CR 509-4) |
| ) | Paul E. Plunkett, Senior Judge |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Russell Ellis has filed a motion pursuant to 28 U.S.C. § ("section") 2255 to vacate his conviction and sentence. For the reasons set forth below, the motion is denied and this case is dismissed.

### Discussion

Ellis is entitled to relief under section 2255 if his "sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose [it], . . . the sentence was in excess of the maximum authorized by law, or [it] is otherwise subject to collateral attack." 28 U.S.C. § 2255. Section 2255 is not a substitute for an appeal. Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992), overruled in part on other grounds, Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994). Consequently, Ellis cannot raise on this motion any

1



nonconstitutional issues that he did not raise on appeal. Id. Morever, with one exception,[1] Ellis may not raise any constitutional issues he did not raise on appeal unless he can show: 1) cause for failing to appeal them and "actual prejudice" from his failure to do so; or 2) "that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice." Id.; McCleese v. United States, 75 F.3d 1174, 1177 (7th Cir. 1996).

Ellis raises a host of ineffective assistance of counsel claims. Specifically, he says that his counsel was in effective for failing to:

> (1) call his former attorney, James Riley, as a witness at the hearing on the motion to suppress statements Ellis made to the police;
>
> (2) object to: (a) the Court's omission of the "substantial step" element from the attempt instruction; (b) the Court's inclusion of crack cocaine in the jury instruction on Count 12; (c) the variance between the allegations in the indictment, which alleged a single conspiracy, and the evidence at trial, which showed three separate conspiracies; (d) the Court's instructions regarding government witnesses Brownlow, Montgomery and Jones; and (e) the Court's continuing criminal enterprise ("CCE") instructions.
>
> (3) request that the jury be instructed that Ellis had to be acquitted of the conspiracy count if he was found to have had an agreement solely with a government agent.

Ellis did not raise any of these claims on appeal, see generally United States v. Smith, 223 F.3d 554 (7th Cir. 2001), presumably because his trial counsel also served as his appellate counsel. See id. at 559. In any event, the government does not argue that any of these ineffective assistance claims is

---

[1] Ineffective assistance of counsel claims that are dependent on evidence outside the trial record may be raised for the first time in a section 2255 motion. United States v. Alcantar, 83 F.3d 185, 191 (7th Cir. 1996).

defaulted. Thus, to the extent procedural default is a viable defense to any of these claims, the Court deems the government to have waived it.[2]

To prevail on each ineffective assistance claim, Ellis must show that his counsel's performance fell below an objective standard of reasonableness and, but for counsel's errors, the result of the proceeding would likely have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). We will address each claim in turn.

## Failure to Call James Riley at Suppression Hearing

Ellis filed a motion to suppress statements he had given to the Chicago police after his arrest on December 7, 1994, claiming that they had been illegally obtained. Specifically, Ellis said that he was not read his *Miranda* rights and was not allowed to call a lawyer, even though he repeatedly asked to do so, until after he had been subjected to hours of questioning. (1/23/96 Suppression Hr'g Tr. at 145-51, 156, 161.) The police, of course, contradicted Ellis' version of events, claiming that he had been fully advised of his rights and had never asked to speak to a lawyer. (Id. at 8-12, 16-22.) Ultimately, the Court credited the government's version of events. (1/28/96 Hr'g Tr. at 13-15.)

Ellis says the result would have been different if his former attorney, James Riley, had been called to testify. According to Ellis, Riley would have testified that: (1) Ellis retained his services on December 8, 1994; and (2) he subsequently contacted AUSA Ron Safer who told Riley that the charges against Ellis had been dropped and that Riley would be notified if Ellis were charged in the future. (Mot. at 5.)

---

[2]The government argues that Ellis has defaulted any direct claims of trial error, but Ellis does not make any such claims. Rather, all of his claims assert ineffective assistance of counsel. (See Mot. at 4-9.)

3

There are two problems with Ellis' proffer. First, it is not supported by an affidavit from Mr. Riley. Thus, at base, it is nothing more than Ellis' speculation as to what Mr. Riley would have said. Second, even if Mr. Riley had sworn to the statements Ellis ascribes to him, it would not help Ellis' case. The issue in the suppression hearing was whether Ellis was informed of his *Miranda* rights and invoked his right to counsel on December 7, 1994. The fact that he hired a lawyer the following day sheds no light on either of those issues. Because Mr. Riley's testimony, as Ellis portrays it, would not have changed the outcome of the motion to suppress, Ellis' lawyer was not ineffective for failing to call him as a witness during that hearing.

## Failure to Object to the Omission of "Substantial Step" from the Attempt Instruction

Ellis also contends that his counsel was constitutionally deficient because she failed to object to the jury instructions for Count 12, which charged Ellis with attempt to possess with the intent to distribute. The instructions were flawed, Ellis says, because they failed to tell the jury that he could be convicted of attempt only if he, among other things, took a substantial step towards possessing narcotics with the intent to distribute.

Ellis is correct that the instruction for Count 12 did not include the substantial step element. (See Trial Tr. at 3406-07.) He is also correct that taking a substantial step toward commission of the crime is an element of attempt. United States v. Valencia, 907 F.2d 671, 683-84 (7th Cir. 1990). Thus, it is at least arguable that his lawyer should have requested that it be included in the instructions.

Ellis can only prevail on this claim, however, if his lawyer's failure to do so prejudiced him. It did not. The government introduced more than ample evidence that Ellis not only took a

substantial step towards possessing cocaine with the intent to distribute, but did, in fact, possess the drug with the intent to distribute. Reginald Jones, an admitted drug dealer who was cooperating with the DEA, testified that Ellis took three kilos of cocaine from the trunk of Jones' car, testimony that was corroborated by an audiotape, a videotape and the testimony of DEA Agent Glynn. (Trial Tr. at 1756-60, 1862-65.) Given the overwhelming evidence that Ellis actually took possession of three kilos of cocaine, he was not prejudiced by the lack of a "substantial step" instruction on Count 12.

**Failure to Object to the Inclusion of Crack Cocaine in the Instruction for Count 12**

Ellis also says that his lawyer should have objected to the Court's inclusion of crack cocaine in the jury instructions for Count 12. In essence, Ellis says, those instructions constructively amended the superseding indictment because Count 12 charged him with attempt to possess *cocaine* with the intent to distribute, not crack.

As an initial matter, Ellis' argument is based on a misreading of the jury instructions. In relevant part, the instructions for Count 12 state:

> To sustain the charge in Count 12 of the indictment . . . the Government must prove the following propositions beyond a reasonable doubt.
>
> > First, that the defendant whom you are considering attempted to possess with the intent to distribute the cocaine or crack cocaine referred to in Count 12.

(Id. at 3406.) In other words, the jury was instructed that they could find Ellis guilty of Count 12 only if they found he attempted to possess with the intent to distribute whatever drug was charged in the indictment. Because the instructions limited the jury's consideration to the drug charged in the indictment, cocaine, they did not constructively amend it.

5

Even if the instructions could be understood as an invitation to convict Ellis of attempt to possess crack with the intent to distribute, they still would not constitute a constructive amendment of the indictment. "[A] constructive amendment occurs where proof at trial goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury. Such error . . . , which in a jury trial can be generated or exacerbated by faulty instructions, violates the Fifth Amendment . . . ." United States v. Pigee, 197 F.3d 879, 886 (7th Cir.1999) (internal quotation marks and citation omitted). Not every variance between the indictment and the jury instructions, however, constitutes a constructive amendment. Id. Rather, jury instructions constructively amend an indictment only if they create a risk that the defendant was convicted of an uncharged offense. Id.

There was no such risk here. Count 12 charged Ellis with "knowingly and intentionally . . . attempt[ing] to possess with intent to distribute . . . approximately three kilograms of mixtures containing cocaine . . . [i]n violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2." (Superseding Indictment, Count 12.) Those statutes make it unlawful for anyone to attempt to possess *any* controlled substance, including crack, with the intent to distribute. See 21 U.S.C. §§ 841(a)(1), 846. Because Ellis was charged with attempt to possess a controlled substance, the jury instructions for Count 12 would not have constructively amended the indictment even if they could have been interpreted as authorizing conviction for attempted possession of crack.

Finally, even if Ellis' lawyer should have objected to the instructions, her failure to do so did not prejudice Ellis. Given the evidence in the case – testimony and audio- and videotape evidence that Ellis had taken possession of three kilograms of powdered cocaine – he still would have been

6

convicted of Count 12 even if the word crack had not appeared in the instructions. (See, e.g., Trial Tr. at 1756-60, 1862-65.) In short, the jury instructions for Count 12 did not prejudice Ellis in any way. His lawyer, therefore, was not ineffective for failing to object to them.

### Failure to Object to the Constructive Amendment of the Indictment by Proof that There Were Three Separate Conspiracies

Though the superseding indictment charged only a single drug conspiracy, Ellis contends that the evidence at trial established that there were three: one involving the Gangster Disciples ("GDs"), a second involving Reginald Jones and his organization, and a third involving Joe Montgomery, Eric Brownlow and their organization. Essentially, Ellis argues, the evidence that Montgomery, Jones and Brownlow, from whom Ellis bought drugs, were not GDs at the time of the events in this case and sold drugs to people who were not GDs, eliminates the possibility of a single conspiracy.

The Court disagrees. The fact that Ellis bought drugs from non-GD dealers does not vitiate the overwhelming amount of evidence that he conspired with his co-defendants and others to possess with the intent to distribute and to distribute narcotics. The evidence showed that the GDs were a highly organized street gang in the business of selling drugs. Smith, 223 F.3d at 560-61. The GDs were organized both territorially and hierarchically. Id. at 560. At the top of the organization was the Chairman and the Board Members. Governors, each of whom was responsible for drug sales in a specific geographic area, and Assistant Governors were next in line, followed by Regents, Coordinators and Soldiers. Id. The GDs had an elaborate set of rules and procedures, which were designed to maximize their drug profits. Id. at 560-61.

The evidence also showed that Ellis fully participated in the GD organization. In 1993, he was a Regent under his co-defendant Sherman Moore. (Trial Tr. at 1189, 1449.) Subsequently, Ellis became a Governor. (Id. at 1450, 1613.) Ellis bought drugs from Montgomery, Brownlow and Jones and sold drugs to Assistant Governor Vincent Martin. (Id. at 689, 699, 1451-52, 1605-10, 1648-49, 1866-67, 1873-75.) Ellis collected drug money from GD Regents and participated in the discipline of lower-ranking GD members. (Id. at 721-24, 1461, 1876.) In short, there was more than sufficient evidence for the jury to conclude that Ellis and others participated in a single GD conspiracy to possess and distribute illegal drugs. Thus, his lawyer cannot be faulted for failing to argue that there wasn't.

**Failure to Object to the Court's Instructions Regarding Brownlow, Montgomery and Jones**

The Court instructed the jury that Eric Brownlow, Reginald Jones and Joe Montgomery, among others, "pled guilty to crimes arising out of some of the same occurrences for which the defendants are now on trial." (Id. at 3386.) Ellis believes that instruction was prejudicial because: (1) the evidence showed that Brownlow, Jones and Montgomery were not part of the GD conspiracy; and (2) Montgomery's guilty plea was unrelated to this case.

It is true that Montgomery's guilty plea was unrelated to this case, a point to which the Court was alerted after the above-quoted instruction was given. After learning of the error, however, the Court amended the instruction as to Montgomery, saying:

> [I]f you will go . . . to the [instruction] that lists all these Government witnesses . . . . . That particular instruction has an error in it because it says that all of these people pled guilty to crimes arising out of some of the same occurrences for which the defendants are on trial. That is true as to everybody except Joe Montgomery. He did not plead guilty to crimes arising out of some of the same occurrences for which the defendants are now on trial.

8

(Id. at 3424-25.) The jury was also told that the government witnesses' guilty pleas "are not to be considered as evidence against the defendants" and that those witnesses' testimony should be "considered with caution and great care" because they had each received benefits from the government in return for testifying. (Id. at 3386-87.) Taken together, those instructions cured any prejudice that the initial instruction about Montgomery may have caused.

Ellis is incorrect, however, when he argues that there was no evidence that Brownlow, Jones and Montgomery were part of the GD conspiracy. On the contrary, as discussed above, the evidence showed that all three supplied drugs to the GDs and that Brownlow and Jones pled guilty to drug conspiracy charges for having done so. (Id. at 1446, 1605-10, 1650-51.) Because there was ample evidence that Brownlow, Jones and Montgomery were a part of the GD conspiracy and the Court corrected the erroneous instruction about Montgomery, Ellis' lawyer had no basis for objecting to the jury instructions concerning those witnesses.

## Failure to Object to the Court's CCE Jury Instructions

Ellis also contends that his trial counsel was ineffective because she did not object to the Court's CCE instructions, which did not require the jury to agree unanimously on the three predicate acts that formed the basis for the conviction. In reality, his counsel did request that the jury be instructed that they had to agree unanimously on the three predicate acts. (Id. at 2734-40.) In accordance with then-current Seventh Circuit law, however, the Court rejected the CCE instruction

proffered by Ellis' counsel. (Id. at 2740.) The fact that Ellis' counsel was unable to persuade the Court to accept her tendered instruction does not render her performance suspect.[3]

Nor was Ellis' counsel ineffective for failing to argue that Count 12 could not be used as a CCE predicate because the "substantial step" element had been omitted from the Count 12 instructions. As discussed above, Ellis was not prejudiced by the omission of the substantial step element from the Count 12 instructions. Thus, Ellis' lawyer had no basis for arguing that Count 12 could not serve as a CCE predicate.

Moreover, even if Count 12 were an impermissible predicate, it still would not invalidate Ellis' conviction on the CCE count. In addition to being convicted on Count 12, Ellis was convicted on Counts 5-8, 13, 15-17, (distribution of a controlled substance) 11, 14, 39 (possession with intent to distribute) and 18-27, 29, 31-36 (use of telephone to facilitate a drug offense), all of which, the jury was told, were permissible CCE predicates. (See 3/16/98 Am. Sentencing Order; Trial Tr. at 3398.) Because Ellis' conviction on Count 12 was not required to sustain his CCE conviction, any error in the Count 12 jury instructions would not have impacted the CCE conviction in any event.

---

[3]To the extent Ellis contends the CCE instruction was a product of judicial rather than attorney error, the claim is not cognizable under section 2255. Ellis raised this claim on appeal and it was decided against him. See Smith, 223 F.3d at 567. Thus, he cannot relitigate the issue here. Belford, 975 F.2d at 313.

## Failure to Request an Instruction that Ellis Could Not Be Convicted of Conspiracy if He Had An Agreement Solely With a Government Agent[4]

Finally, Ellis says that his lawyer erred when she failed to request an instruction concerning conspiracy with government agents. Such an instruction was necessary, Ellis says, because Jones and Brownlow both admitted that they cooperated with the government after their arrests.

Ellis' argument might be more persuasive if the evidence showed that his only dealings with Brownlow and Jones occurred when they were acting as government agents. But it did not. Both Brownlow and Jones testified that they sold drugs to Ellis and other GDs before they started cooperating with the government. (Trial Tr. at 1445, 1451-52, 1648.) Moreover, Jones said that he sold drugs to Ellis and others after he became a government agent, in direct violation of his cooperation agreement. (Id. at 1653.) Because the evidence showed that Ellis bought drugs from Brownlow and Jones both before and after they became government agents, his lawyer had no reason to request a government agent conspiracy instruction.

Moreover, even if Ellis had only purchased drugs from Brownlow and Jones in their capacities as government agents, the evidence in the case still would not have supported the instruction he seeks. The conspiracy evidence against Ellis was not limited to the testimony of Brownlow and Jones. On the contrary, as noted above, there was ample evidence that Ellis also conspired with, among others, his co-defendants and other GDs to distribute illegal drugs. Given that evidence, any request by Ellis' lawyer for a government agent conspiracy instruction would have been futile, see United States v. Payne, 226 F.3d 792, 794 (7th Cir. 2000) (defendant is entitled to

---

[4] Ellis also says that his lawyer should have asked for a jury instruction "that 'Post-Arrest Evidence' is not in furtherance of any conspiracy." (Mot. at 8.) The Court construes this as a reiteration of his claim that the jury should have been instructed that he could not have conspired with Brownlow and Jones once they started cooperating with the government after their arrests.

11

jury instruction only if, among other things, "defendant's theory is supported by the evidence" and "failure to include the instruction . . . would deny [defendant] a fair trial"), hardly the basis for an ineffective assistance claim.

## Conclusion

For all of the reasons stated above, Ellis' section 2255 motion is denied and this case is dismissed with prejudice.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** /O - 8 - O3